### MISCO v. TEXAS EMPLOYERS INS. ASS'N.

#### No. 12304.

Court of Civil Appeals of Texas. Galveston.
July 26, 1951.

Rehearing Denied Oct. 25, 1951.

MacNaughton & Leveridge, of Houston, for appellant.

Royston & Rayzor, John R. Brown and E. D. Vickery, all of Houston, for appellee.

CODY, Justice.

This is an appeal from a directed judgment rendered against plaintiff, appellant here, upon defendant's written motion, made at the conclusion of plaintiff's evidence. The suit was one by plaintiff to cancel and set aside a compromise agreed settlement between the parties for injuries sustained by

plaintiff in the course of his employment as a stevedore with the Lone Star Stevedoring Company, Inc. The defendant, appellee here, was the carrier of workmen's compensation insurance for plaintiff's employer.

The allegations of plaintiff's petition were to the effect that about June 30, 1949, while acting in the course of his employment he was struck in the right eye by a steel cable, and this resulted in the detachment of the entire retina from the eye; that his employer's doctor made frequent examinations of the eye, and represented to plaintiff that the vision in the eye was normal, and that all plaintiff needed was a pair of spectacles; that plaintiff believed and relied thereon; that while he was on the job, and on the point of leaving at the close of the day, defendant's agent brought him a paper which he represented to plaintiff was the authorization for the payment for the glasses which had been prescribed by his employer's doctor; that plaintiff is not familiar with the English language, and he signed the paper upon said representation.

Plaintiff further alleged that on August 29, 1949, after continued difficulty and suffering, he learned from another doctor, whom he employed at his own expense, that he had suffered a detached retina; that the said doctor performed two operations in attempting to restore vision to plaintiff's injured eye, but without success; that because of the aforesaid false representations fraudulently made by the agents of plaintiff's employer, and so made by defendant's agent, plaintiff did not know the contents of the paper which he had signed, and so did not appeal from the Board's approval of the purported compromise settlement agreement. And plaintiff prayed for the cancellation thereof on the ground of fraud.

Plaintiff has predicated his appeal upon two points, as follows: (1) That there was sufficient evidence that plaintiff received a compensable injury in the course of his employment, and (2) that plaintiff made out a prima facie case showing (a) the injury was received by him in the course of his employment, and (b) that he was induced to sign the purported compromise settlement agreement upon false representations.

We are constrained to overrule the points because there was no competent evidence to establish that being struck by the steel cable on June 30, 1949, probably caused the detachment of the retina from plaintiff's eye, and the loss of vision.

In the recent case of Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W. 2d 466, 468, our Supreme Court held that in order for a plaintiff to be entitled to have a compromise settlement agreement, which had been approved by the Board, set aside because its execution was induced by false representations, the plaintiff must show (1) the false representations and that they were made by the defendant or his authorized agents, (2) the reliance thereon by plaintiff, (3) that plaintiff has been injured in that he has a meritorious claim for compensation, (4) that he must tender back what he received or show that his injury is greater than the amount he has been paid or other facts which excuse such tender. The court further said, "The pleading of the facts with regard to plaintiff's right to compensation are incidental to the relief sought by the cancellation and go to show the injury suffered by the plaintiff by virtue of the execution of the release. * * *"

The compromise settlement agreement was in usual form, and showed the amount for which same was made was $35; that no time had been lost from work; that no compensation had been paid to date; that the employee was not disfigured as result of the injury. Attached to said agreement was a typewritten statement, showing his place of residence, and, further stated, "On June 30, 1949, I was married and was employed by Lone Star Stevedoring Co. On June 30, 1949, I was using a burning torch without my goggles and injured my right eye." Then follows, partially typewritten, and partially purporting to be written by plaintiff, this, "I lost 8 days from work due to this injury. I have been wearing glasses about 4 years I read this It is true

"/s/ Nick Misco"

The same persons who signed as witnesses to the agreement to which the above statement was attached, also signed as witnesses to said statement.

The plaintiff testified in his own behalf that his eye was injured from being struck by a steel cable which he was rolling up, and which slipped and struck him on the eye. That he reported his injury to his superintendent, who later sent him to the company doctor; that it was on July 1, 1949, while he was using a sledge hammer he found he couldn't see out of the eye, and that he was then sent to the doctor, and reported to the doctor about getting hit on the eye with a cable a few days before. The upshot of the remainder of plaintiff's relevant testimony was that after certain physical examinations he was told by his employer's doctors—after his eye had been examined by them—that there was nothing wrong with his eye; that he continued to protest that his eye hurt and bothered him, and repeated what he had told about the symptoms from which he concluded there was trouble with his vision, among which was that he couldn't see to hit straight; that the doctor after further examination told him he needed eyeglasses. Plaintiff's evidence was that he continued to have trouble with his vision, and then was sent, on August 27, 1949, to see another doctor, who after examining him, told him that the trouble with his eye could have been remedied if it had received proper attention promptly; that the only remedy was an operation, and at that date (August 27) he had only a fifty-fifty chance of the operation being successful. He testified further that he reported back again to his employer's doctor, and that doctor continued to protest that he could find nothing wrong with the eye. Plaintiff testified that he then went to yet another eye doctor who told him that an operation might save the vision of the eye; further, he testified he had this last doctor operate, but after two operations, which were performed in September, 1949, and in early October, he lost the vision of his right eye.

It will be noted that plaintiff's evidence as to the opinions expressed to him by the doctors was hearsay. In so far as such expressions of opinions constituted representations upon which plaintiff relied when he signed the compromise settlement agreement of August 8, 1949, sought to be set aside, plaintiff's evidence was competent.

But there was no evidence by a physician that a stroke by a steel cable, such as plaintiff testified that he received on June 26, 1949, could, and probably did, cause the retina of the right eye to become detached, and the vision of that eye lost. Indeed, plaintiff upon cross-examination testified to two similar strokes by a steel cable upon the eye in May, 1949, and further, that he was struck in the eye along about the same time by a soft ball while playing the game. We are constrained to hold that from the evidence before the jury, the jury was incompetent to conclude, from their own common knowledge, unaided by expert medical testimony, that the plaintiff's retina was thereby probably caused to become detached, and his vision lost. See Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1; Scott v. Liberty Mutual Ins. Co., Tex.Civ. App., 204 S.W.2d 16, N.R.E.

For the reason given we think that plaintiff failed to show that he was injured by signing the release because he failed to show by competent evidence that he has a meritorious claim for compensation, and for this reason are constrained to affirm the judgment.

Affirmed.