TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00531-CV







Dalmac Construction Company, Inc., Appellant



v.



Texas A&M University and Board of Regents of Texas A&M University, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 98-02855, HONORABLE PAUL DAVIS, JUDGE PRESIDING








 Appellant DalMac Construction Company ("DalMac") brought suit against 
appellees Texas A&M University and the Board of Regents of Texas A&M University ("A&M")
for claims arising out of a construction project. A&M filed a plea to the jurisdiction asserting that
its sovereign immunity from suit deprived the trial court of jurisdiction. The trial court agreed
and dismissed DalMac's claims for want of jurisdiction. On appeal, DalMac challenges this
dismissal on the grounds that (1) A&M waived immunity from suit on the contract by its conduct,
(2) DalMac is entitled to discovery on the facts relating to A&M's claim of immunity from suit,
and (3) the trial court had jurisdiction to hear DalMac's constitutional claims absent legislative
consent to sue. In light of this Court's decisions in Aer-Aerotron, Inc. v. Texas Department of
Transportation, No. 3-97-649-CV (Tex. App.--Austin June 17, 1999, no pet. h.), and Little-Tex
Insulation Co. v. General Services Commission, No. 3-98-297-CV (Tex. App.--Austin July 29,
1999, no pet. h.), we will reverse the order of dismissal and remand the cause to the district court
for further proceedings.


FACTS AND PROCEDURAL BACKGROUND (1)

 In 1993, A&M contracted with DalMac for construction of a $30 million 
Recreational Sports Building and Natatorium ("RSB"). DalMac had submitted a bid for the
project based upon plans and specifications prepared by A&M's architect. A&M awarded the
contract to DalMac in the amount of $30 million on February 15, 1993. Work began on the
project on March 5, 1993. DalMac completed the project in November 1995. 

 According to DalMac's allegations, DalMac discovered "almost immediately" that
the plans and specifications on which it bid did not adequately describe and define the work to be
performed. DalMac also discovered that the plans and specifications were frequently in conflict
and unclear, and that some of the specifications and plans were impossible to meet. 

 Seeking additional information to clarify the specifications and scope of the work
to be performed under the contract, DalMac submitted numerous Requests for Information
("RFIs") to A&M. By February 14, 1994, DalMac had submitted 275 RFIs. DalMac alleges that
A&M did not respond to the RFIs in a timely or adequate manner. DalMac complains that for the
first three months of the project A&M's average response time was 25 days, and that A&M took
over a year to respond to some RFIs. 

 Because of changes in the plans and specifications, DalMac rescheduled work and
incurred expenses beyond the original contract price. As a result of the corrections and
clarifications, DalMac submitted change proposals, in accordance with the terms of the contract,
to perform different or additional work beyond the scope of the original contract. A&M denied
many of the change proposals and others went unanswered. When proposed change orders were
denied, DalMac followed the dispute resolution process specified in the contract. One month
before construction on the RSB was completed, DalMac sought additional time to complete the
project and submitted a claim for an adjustment to the contract price in the amount of $2.4 million
to cover increased costs of construction. A&M paid $255,171 of the claim. DalMac alleges that
the project was completed in November 1995. After exhausting administrative remedies,
including non-binding arbitration, DalMac filed suit seeking damages in excess of $3 million.

 In its petition, DalMac alleged that A&M failed to perform according to the terms
of the contract and violated various provisions of the United States and Texas Constitutions,
including denial of procedural and substantive due process, taking property without compensation,
violation of the open courts provision, and impairment of contracts. DalMac also argued that it
was entitled to discovery of facts supporting its claim that A&M had waived sovereign immunity. 
Following a July 1, 1998 hearing, the district court dismissed DalMac's claims for want of
jurisdiction. 

DISCUSSION

 DalMac acknowledges that it did not seek legislative permission to sue A&M. 
Relying upon Federal Sign v. Texas Southern University, 951 S.W.2d 401 (Tex. 1997), DalMac
contends that legislative consent was not required and that it is entitled to bring suit because A&M
waived sovereign immunity and consented to suit by accepting the benefits of full performance of
the contract by DalMac. 

 In analyzing whether a state entity waives immunity in a contractual dispute, we do
not write on a clean slate. In Federal Sign, the Texas Supreme Court held that the State does not
automatically waive immunity from suit when it enters into a contract with a private person or
entity. 951 S.W.2d at 408. Starting from the premise that "sovereign immunity, unless waived,
protects the State of Texas, its agencies and its officials from lawsuits for damages," id. at 404,
the majority of the court stated: "[A] private citizen must have legislative consent to sue the State
on a breach of contract claim. The act of contracting does not waive the State's immunity from
suit." Id. at 407. Despite Federal Sign's allegations of waiver by conduct of the State, the court
declined to find waiver. 

 We acknowledge, however, a narrow opening left by the supreme court. In an oft-cited footnote, the court observed that its opinion should not "be read too broadly" and further
noted: "There may be other circumstances where the State may waive its immunity by conduct
other than simply executing a contract so that it is not always immune from suit when it
contracts." Id. at 407 n.1 (emphasis added). Several members of the court, in a concurring
opinion, attempted to define the size of the aperture by suggesting that a different result might
pertain if (i) Federal Sign had installed the scoreboards and Texas Southern University ("TSU")
refused to pay the agreed price, (ii) TSU had accepted the scoreboards, acknowledged that Federal
Sign had fully complied with the contract but refused to pay as agreed upon, or (iii) TSU refused
to pay to force Federal Sign to make a concession on another contract. As stated: "[T]oday's
decision does not hold that the State is always immune from suit for breach of contract absent
legislative consent; it holds only that the mere execution of a contract for goods and services,
without more, does not waive immunity from suit." Id. at 413 (Hecht, J., concurring). Thus, the
court left for another day the type of conduct by which a State may waive its immunity.

 Drawing on both the majority's footnote and the concurring opinion, DalMac
asserts that while the act of contracting alone may not waive immunity from suit, A&M has
waived immunity by its conduct. DalMac confines Federal Sign's holding to a single limited
question: Does a governmental unit, merely by executing a contract, waive sovereign immunity
from suit for breach of contract before the other party has tendered performance? See id. at 412. 
DalMac contends that Federal Sign stands only for the proposition that the mere execution of a
contract for goods and services, without more, does not waive immunity from suit.

 Most recently, this Court framed the issue left open by Federal Sign as follows: 
"[D]id the [State] engage in conduct, beyond the mere execution of the contract, that waived its
immunity from suit?" See Aer-Aerotron, Inc., No. 3-97-649-CV, slip op. at 7; see also Little-Tex,
No. 3-98-297-CV, slip op. at 10. We concluded in Aer-Aerotron that the State, by accepting
goods and services, extending the term of the contract, increasing its orders, twice promising to
pay the balance due, and requesting and receiving technical modifications and assistance, waived
its immunity from suit for breach of contract when it engaged in actions that "fully implicated it
in the performance of the contract" over a period of two and a half years. See Aer-Aerotron, Inc.,
slip op. at 8. We held that an entity of the State may waive its immunity from suit with regard to
a particular contract by its conduct. Id.; see also Little-Tex, slip op. at 12.

 Likewise, DalMac affirmatively alleged waiver of sovereign immunity by citing
conduct by the State other than the mere execution of the construction contract. While DalMac
alleges that A&M supplied incomplete, conflicting, and erroneous specifications that resulted in
DalMac incurring additional expenses, these allegations alone are insufficient to constitute waiver
by conduct of the State. In a suit against the State, a plaintiff generally has the burden to plead
that sovereign immunity to suit has been waived. See Missouri Pac. R.R. Co. v. Brownsville
Navigation Dist., 453 S.W.2d 812, 813-14 (Tex. 1970). Without sufficient allegations of waiver
by conduct of the State itself, the trial court is without jurisdiction to hear the case.

 DalMac asserts, however, that it should be permitted the opportunity to pursue
limited discovery on A&M's plea to the jurisdiction to uncover evidence of additional conduct by
A&M to support DalMac's waiver theory. We agree. Because Federal Sign, Aer-Aerotron, and
Little-Tex tell us that there may be contract cases in which the State waives its immunity from suit
by its conduct, appellant is entitled to demonstrate that legislative consent to sue is unnecessary
under the facts and circumstances of this case. Accordingly, we remand to the district court for
further proceedings. 


CONCLUSION

 In light of Aer-Aerotron, Inc. v. Texas Department of Transportation and Little-Tex
Insulation Co. v. General Services Commission, we reverse the district court's judgment
dismissing DalMac's cause of action for want of jurisdiction and remand the cause to that court
for further proceedings.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Reversed and Remanded

Filed: July 29, 1999

Do Not Publish Released for publication February 15, 2001. Tex. R. App. P. 47.3(c).

1. In a plea to the jurisdiction, unless the defendant pleads and proves that allegations were
fraudulently made to confer jurisdiction, the trial court must take the factual allegations in the
plaintiff's petition as true. See Brannon v. Pac. Employers Ins. Co., 224 S.W.2d 466, 469 (Tex.
1949); Firemen's Ins. Co. v. Board of Regents, 909 S.W.2d 540, 542 (Tex. App.--Austin 1995,
writ denied). Thus, for the limited purpose of determining whether the trial court had jurisdiction
over DalMac's causes of action, we will assume the truth of the allegations of its petition. The
facts then are taken from DalMac's original petition. It should be noted, however, that the State
filed a general denial, thereby placing in issue DalMac's allegations, inter alia, that A&M
breached the contract. 


ive immunity from suit.

 Most recently, this Court framed the issue left open by Federal Sign as follows: 
"[D]id the [State] engage in conduct, beyond the mere execution of the contract, that waived its
immunity from suit?" See Aer-Aerotron, Inc., No. 3-97-649-CV, slip op. at 7; see also Little-Tex,
No. 3-98-297-CV, slip op. at 10. We concluded in Aer-Aerotron that the State, by accepting
goods and services, extending the term of the contract, increasing its orders, twice promising to
pay the balance due, and requesting and receiving technical modifications and assistance, waived
its immunity from suit for breach of contract when it engaged in actions that "fully implicated it
in the performance of the contract" over a period of two and a half years. See Aer-Aerotron, Inc.,
slip op. at 8. We held that an entity of the State may waive its immunity from suit with regard to
a particular contract by its conduct. Id.; see also Little-Tex, slip op. at 12.

 Likewise, DalMac affirmatively alleged waiver of sovereign immunity by citing
conduct by the State other than the mere execution of the construction contract. While DalMac
alleges that A&M supplied incomplete, conflicting, and erroneous specifications that resulted in
DalMac incurring additional expenses, these allegations alone are insufficient to constitute waiver
by conduct of the State. In a suit against the State, a plaintiff generally has the burden to plead
that sovereign immunity to suit has been waived. See Missouri Pac. R.R. Co. v. Brownsville
Navigation Dist., 453 S.W.2d 812, 813-14 (Tex. 1970). Without sufficient allegations of waiver
by conduct of the State itself, the trial court is without jurisdiction to hear the case.

 DalMac asserts, however, that it should be permitted the opportunity to pursue
limited discovery on A&M's plea to the jurisdiction to uncover evidence of additional conduct by
A&M to support DalMac's waiver theory. We agree. Because Federal Sign, Aer-Aerotron, and
Little-Tex tell us that there may be contract cases in which the State waives its immunity from suit
by its conduct, appellant is entitled to demonstrate that legislative consent to sue is unnecessary
under the facts and circumstances of this case. Accordingly, we remand to the district court for
further proceedings. 


CONCLUSION

 In light of Aer-Aerotron, Inc. v. Texas Department of Transportation and Little-Tex
Insulation Co. v. General Services Commission, we reverse the district court's judgment
dismissing DalMac's cause of action for want of jurisdiction and remand the cause to that court
for further proceedings.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Reversed and Remanded

Filed: July 29, 1999

Do Not Publish Released for publication February 15, 2001. Tex. R. App. P. 47.3(c).

1. In a plea to the jurisdiction, unless the defendant pleads and proves that allegations were
fraudulently made to confer jurisdiction, the trial court must take the factual allegations in the
plaintiff's petition as true. See Brannon v. Pac. Employers Ins. Co., 224 S.W.2d 466, 469 (Tex.
1949); Firemen's Ins. Co. v. Board of Regents, 909 S.W.2d 540, 542 (Tex. App.--Austin 1995,
writ denied). Thus, for the limited purpose of determining whether the trial court had jurisdiction
over DalMac's causes of action, we will assume the truth o